Bryce POMILLA, Appellant,

v.

James B. BUMGARDNER et al., Appellees.

No. 13446.

Court of Civil Appeals of Texas.

Houston.

Aug. 27, 1959.

918

Aaron Goldfarb, Houston, for appellant.

Spiner, Pritchard & Thompson, Clark G. Thompson and Troy T. Stokes, Houston, for appellees.

BELL, Chief Justice.

Appellant Pomilla was the owner of one-third of the stock of appellee, North Side Ready-Mix Concrete Company, a corporation. He individually, as plaintiff, brought suit against the corporation, James B. Bumgardner, Jack Dean and Clark G. Thompson. He also purported to make the corporation an involuntary plaintiff. Bumgardner was and is the holder of the corporate stock not owned by Pomilla. The other two individuals were directors of the corporation.

Pomilla alleged that from the time the corporation was formed in 1953 until on or about September 28, 1955, the stock of the corporation was owned by him, Bumgardner and Clarence Watkins, each of them owning 33⅓ shares of stock; that on or about September 28, 1955, Watkins sold his stock to Bumgardner, without giving him (Pomilla) an opportunity to buy the stock on the same or similar terms at which it was sold to Bumgardner; that the By-laws of the corporation gave him the right to purchase on the same terms and conditions at which it should be offered to others, before it could be sold to others; and, that the sale in violation of such provision is void. Plaintiff further alleged the sale violated a "Buy and Sell agreement" of April 29, 1955, providing that if a stockholder should during his life desire to sell, he should give the corporation notice of his intention to sell and the corporation should have the exclusive right for 30 days thereafter to purchase the stock. He alleges the absence of the requisite written notice. In the alternative plaintiff alleges his right to purchase one-half of Watkins' stock from Bumgardner by reason of a written agreement between him and Bumgardner dated September 28, 1955.

Plaintiff alleged Bumgardner was indebted to the corporation in the sum of $17,483.42. Also he alleged the corporation owed him, as salary, $4,487.50 and he asked for a reasonable attorney's fee because of

the suit being in part for the recovery of salary.

Prayer was that for an injunction enjoining Bumgardner from voting the stock he purchased from Watkins; that plaintiff have judgment declaring the sale of the stock to Bumgardner void; or, in the alternative, that Bumgardner be ordered to turn over to Pomilla one-half of the Watkins stock at the market price to be determined by the Court after an audit; that Bumgardner be ordered to pay the corporation $17,483.42; that Pomilla recover as salary from the corporation $4,487.50 together with a reasonable attorney's fee.

Certain other injunctive relief was sought against the officers and directors who were elected September 30, 1958, but such was not granted and is not involved in this appeal.

Trial was before the court without a jury. Judgment was rendered denying Pomilla any relief in respect to the corporate stock. He, however, recovered a judgment for $2,953.50 for salary unpaid together with an attorney's fee of $1,000. The corporation recovered judgment of $800 against Bumgardner.

Appellant, Pomilla, has four Points of Error, on which he predicates his appeal:

1. The court erred in not holding the sale from Watkins to Bumgardner was void.

2. The trial court erred in failing to enjoin Bumgardner from voting the stock acquired from Watkins.

3. The Trial Court erred in refusing to enforce the agreement between Pomilla and Bumgardner under which Pomilla allegedly obtained the right to purchase one-half of the Watkins stock.

4. The court erred in failing to order Bumgardner to transfer one-half of the stock he purchased from Watkins to Pomilla at the market price, to be determined by an audit or appraisal.

The first two Points really involve the question as to whether Pomilla is the intended beneficiary of the hereinafter quoted By-law, or the agreement of April 29, 1955.

■ The By-law upon which appellant relies reads as follows:

"In the event any stockholder hereof shall receive a bona fide offer to sell any number of his shares of stock in this corporation, he must offer to sell this stock to the other shareholders of the corporation at the offered price and the other shareholders must have refused to accept such offer, before said stock can be sold to any one other than a shareholder of the corporation. Any sale made in violation of this provision is void."

We think a reading of the By-law reads unmistakably to the conclusion that it was not intended to prevent the sale by one stockholder to another stockholder, but was intended to prevent the sale by a stockholder to an outsider who owned no corporate stock, unless the stockholders had first refused to purchase the stock offered for sale. Bumgardner having been a stockholder at the time Watkins sold to him, the sale did not violate the By-law. This By-law gave no right to Pomilla superior to the right of Bumgardner, so it is immaterial as to whether Watkins offered to sell the stock to Pomilla on the same or similar terms.

Pomilla contends, however, that under an agreement of April 29, 1955, Watkins could not sell his stock without giving written notice to the corporation of his intention to do so, and, after such notice the corporation would have the exclusive right for a 30 day period to purchase the stock.

The agreement is lengthy and need not be noticed in detail. It is sufficient to say that it was an agreement whereby the corporation took out life insurance on the three stockholders and gave the corporation the right in case of a stockholder's

death to purchase the stock of the deceased stockholder. The provision of the agreement relied on by appellant Pomilla reads as follows:

"If any Stockholder desires to sell any of his stock during his lifetime, he shall give the Corporation written notice of his intention to sell and the Corporation shall have the exclusive right to purchase such stock at any time within 30 days from the date of such notice."

■ The appellant says no written notice was given the corporation by Watkins of his intention to sell. This is correct. However, the evidence shows that Pomilla, Watkins and Bumgardner were the only stockholders; they were the directors of the corporation, and in 1955, when the sale was proposed and consummated, Pomilla was President. The evidence undisputably shows that in August of 1955 all three talked about the proposed sale. Pomilla did not buy because he did not at that time have the cash which the said Watkins wanted for the stock and did not have security, as did Bumgardner, to satisfy Watkins with a credit sale. At all events, all officers, directors and stockholders in fact had notice of the proposed sale, and no one proposed that the corporation buy the stock. This was notice to the corporation. Vogel v. Zipp, Tex.Civ.App., 90 S.W.2d 668, error dism.; Waggoner v. Herring-Showers Lumber Co., 120 Tex. 605, 40 S.W.2d 1; 10–B Tex.Jur., § 543, pp. 599–600.

Too, it is to be noted that nowhere in plaintiff's petition does he ask that the corporation be permitted to purchase the stock. As a matter of fact, he asks that he individually be permitted to purchase one-half of it. He offers no proof to show the corporation was in a position to do so. Even should it be said the sale violated the contract, it would but give the corporation a suit for damages or possibly for specific performance. Neither is sought here.

■ Appellant Pomilla next contends that the Trial Court erred in refusing to enforce an agreement dated September 28, 1955. The alleged agreement is as follows:

Houston, Texas,
September 28, 1955

Mr. Bryce Pomilla
Houston, Texas

Dear Mr. Pomilla:

I have this date purchased thirty-three and one-third (33⅓) shares of stock from Mr. Clarence Watkins in and to North Side Ready-Mix Concrete Company, a Texas corporation, with domicile in Houston, Harris County, Texas, and in conformity with Article 4, Section 3, of the By-laws of said corporation.

I agree that when you are in a position to buy one-half of these thirty-three and one-third (33⅓) shares which I have purchased from Mr. Watkins, I will sell the said shares to you at such price as we may agree upon, keeping in mind the fair market value at such time; provided that we are amicably getting along in the said business at such time of your purchase.

Yours very truly,
(Signed)   J. B. Bumgardner
_____
J. B. Bumgardner

■ This was no enforceable agreement. The terms of the sale were not agreed upon. Really it seems to be but an offer to Pomilla. However, before a contract may be enforced, its terms must be certain. 10–A Tex.Jur., § 13, and numerous authorities there cited. Here there was no price agreed upon. The letter from Bumgardner was merely an offer to negotiate for the sale of the stock at a price to be agreed upon. It is not contended that any price was ever agreed to by the parties. In fact the evidence shows they could never agree on a price. There was no agreement to sell at the market value. The market

value, if any, was only one factor to be considered. It might also be noted that the evidence fails to reflect that the stock had a market value. In fact, the appellant seems to proceed on the theory there was no market value for the stock. Market value is the price for which property will sell when offered for sale by one under no compulsion to sell to one under no compulsion to buy. Here appellant asks the Court to appoint an auditor to determine the value of the stock, which indicates to us an effort to determine the book value of the stock. The parties never agreed on a price at which there would be a sale. The courts cannot make a contract for the parties.

Too, it will be noted the letter from Bumgardner to Pomilla stated there would be a sale only if at the time Pomilla desired to purchase, the two were getting along amicably. The evidence establishes they were not getting along amicably. In fact, Pomilla no longer worked for the corporation, but worked for one of its competitors, and he was soliciting business from customers of the corporation for his employer.

We overrule each Point of Error asserted by appellant.

■ The appellees assert two Cross-Points of Error:

1. They contend the Trial Court erred in allowing an attorney's fee of $1,000 contending the amount is excessive.

2. They assert the parties agreed on the amount of salary owed, but the Court allowed a $400 item that had previously been deducted from appellant's salary.

We overrule both Cross-Points.

The basis of appellant's complaint as to the amount of attorney's fee is that the parties stipulated as to the amount due for salary and also that there was only one paragraph in the pleading dealing with the salary alleged to be owed.

It does appear that at some stage of the trial the amount owed for salary, except for $400, was stipulated. However, it also appears that when suit was first filed some $8,087.50 was sued for. It had not been paid though demand had been made for payment. Then plaintiff filed a motion for summary judgment and the corporation then paid $4,000. From the record the stipulation of the amount due was not made until after the introduction of accounts. Even then there was a difference between the parties over a $400 item that had been charged on the books of the company against appellant's salary. This amount was ultimately allowed appellant by the court.

The evidence is not satisfactory covering the amount of time spent generally by the attorneys in connection with the salary claim. There were some conferences; there was a motion for summary judgment; there were an original, first amended and second amended petition filed, and the total amount originally involved was $8,087.50, $4,000 of which was paid after the suit was filed but before trial. Then there was some short time spent in proving up and introducing the accounts. The Trial Court had all of these facts before him. We would say the fee allowed was liberal, but we cannot say it was excessive.

Appellees next contend the trial court erred in allowing appellant to recover an item of $400 that had been charged against appellant's salary on the books of the corporation in 1955. Appellant said this was money he got from the corporation and used for the corporation in entertainment of its customers and prospective customers. Appellee corporation says the charge-back was made in 1955 and appellant made no complaint. Too, it is urged there were no records of the expenditures to support appellant's testimony he used the money for corporate purposes.

A fact issue was raised that the Court determined adversely to appellee Corporation.

The judgment of the Trial Court is affirmed.