Wylie E. CASTEEL et al., Appellants,

v.

Thomas C. GUNNING, Jr., et al., Appellees.

No. 5767.

Court of Civil Appeals of Texas.

El Paso.

March 16, 1966.

Rehearing Denied April 6, 1966.

Potash, Cameron, Bernat & Studdard, Peticolas, Luscombe & Stephens, El Paso, for appellants.

Lipscomb, Fisk & Cox, Scott, Hulse, Marshall & Feuille, James L. Gallagher and George W. Finger, El Paso, for appellees.

PER CURIAM.

In the year 1913 Mr. Wylie E. Casteel and Mr. Thomas C. Gunning, Sr. initiated a retail drug business which they owned and controlled as equal partners. As time went by, they expanded and established a number of other drug stores. There was a corporation formed and the stock was equally divided between Mr. Casteel and Mr. Gunning. Thereafter, they made some stock available to the employees of the corporation. They also created two additional corporations to manage the real estate used or owned by the drug stores. Somewhere in the 1930's R. M. Wiggs, Jr. became an employee and eventually acquired stock in all three corporations, and was President of the company known as Gunning-Casteel, Inc. (the drug company). Mr. Wiggs died suddenly and unexpectedly on November 22, 1963. At the time of his death he owned 80 shares of stock in Gunning-Casteel & Wiggs, Inc., and 5 shares of stock in Gunning-Casteel Realty Corporation. These were the two corporations set up to manage and handle the real estate. Mr. Wiggs also acquired 394 shares of stock in the Gunning-Casteel, Inc. corporation, of which he was President.

After the death of Mr. Wiggs, the question of his stock apparently began to be a matter of concern to the Casteel and the Gunning families, as well as some of the employees and stockholders, and at one time Mr. Randolph Delk is alleged to have tried to sell the Wiggs stock to Tom Gunning, Jr., Mrs. T. C. Gunning, Sr., and to a complete stranger named Mr. Bone, and to Mr. Casteel. Mr. Gunning, Sr. had passed away leaving his son and widow, Mrs. T. C. Gunning, Sr., in possession of the Gunning stock. His death preceded that of Mr. Wiggs.

Mr. Wiggs had executed a will some time prior to his death. Mrs. Dorothy Wiggs survived her husband and was in ownership and control of half of the stock owned by her husband. The State National Bank of El Paso, as Executor of the Estate, con-

trolled the other half. Hereafter, all of the stock owned by Mr. Wiggs at his death will be referred to as "Wiggs stock", as that is the way in which it is described in certain documents to be discussed hereafter. In other words, the term "Wiggs stock" means both that held by Dorothy Wiggs and by The State National Bank, Executor.

It is alleged that Mrs. Wiggs had authorized Mr. Delk to represent her in the sale of her stock. We have not found in the record any evidence that Mr. Delk had any power of attorney from either the Bank or Mrs. Wiggs, or any authority or power to *close* a deal for the stock or sign anyone's name to any instrument transferring stock.

In the course of events the record indicates that Mr. Delk contacted Mr. Casteel, and it is alleged that they agreed on a transaction whereby Mr. Casteel would buy the Wiggs stock, and it is alleged that they "shook hands" on the deal. This was stated to have taken place February 1, 1964 and, as stated in the brief submitted by Mr. Casteel, he brought this suit to enforce this contract which he states was consummated between himself and Mr. Delk. On February 3rd Mr. Delk took a purchase contract to Mr. Casteel's office and accepted a check as down payment. This contract apparently was never executed or carried out, nor was the check cashed; so we must presume that Mr. Casteel relies largely on the oral agreement made two days before.

On February 26th appellant (who was plaintiff below) W. E. Casteel, and appellees (defendants below) Thomas C. Gunning, Jr. and Mrs. Tom C. Gunning, Sr., each executed separate but identical contracts or offers to buy the Wiggs stock, with and/or to appellees Mrs. Dorothy P. Wiggs and The State National Bank of El Paso, Executor of the Estate of R. Martin Wiggs, Jr., Deceased. These instruments submitted identical offers to purchase the Wiggs stock in the three Gunning-Casteel companies. Mrs. Dorothy Wiggs signed both documents, but the Bank did not. It was set forth in each instrument that the sellers of the stock retained the unencumbered right to determine if either of said above-described offers would be accepted by them. Then, on April 10, 1964, pursuant apparently to said contract and/or offer The State National Bank of El Paso as Executor and Trustee under the Will of R. M. Wiggs, Jr., Deceased, and Mrs. Dorothy Wiggs, entered into a contract of sale with Tom C. Gunning, Jr., and Mrs. T. C. Gunning, Sr. It is alleged that the sale was consummated in accordance with such contract and/or offer.

Thereafter, Wylie E. Casteel, appellant, instituted suit against appellees seeking, among other things, to enforce the oral agreement of February 1st, which he maintains was entered into between Mr. Delk and himself, alleging that Mr. Delk was the agent for Dorothy Wiggs and the Bank. Alternatively, appellant claims that the sale of the Wiggs stock to the Gunnings was in violation of certain provisions of the by-laws, as well as claiming a constructive trust to five shares of stock in one of the realty corporations.

Appellant-intervenors are employee stockholders in only the drug company. Their position is that the sale of stock in said drug company, as set forth above, was void and ineffective because of deficiencies in the stock certificates, and that they were not properly transferred on the books of the company, and was in violation of certain by-laws of the company.

The appellees have defended on the ground that appellants are attempting to vary the terms of the written contract or offer dated February 26, 1964 by parol evidence and evidence of a prior parol contract. They also maintain that neither Mrs. Wiggs nor The State National Bank would or did delegate or grant any authority to Mr. Delk to enter into a contract or sale binding either Mrs. Wiggs or the Bank, but that his authority was only to find a buyer. Appellees also maintain that the by-law provisions did not prohibit or purport to prohibit the sale of such stock between stock-

holders, and that there existed no constructive trust.

The trial court sustained appellees' special exceptions relating to a constructive trust. The said court also sustained appellees' motion to dismiss relating to the by-law provisions asserted by appellant and intervenors; and so the trial was pretty much confined to matters pertaining to the oral contract alleged to have been consummated between Mr. Delk and Mr. Casteel. Finally, the trial court, after hearing considerable testimony, granted the appellees' motion for instructed verdict. It must be constantly borne in mind that neither Mrs. Wiggs nor Mr. Delk appear to have testified, as evidenced by the Statement of Facts.

For the purpose of clarity and better understanding of this controversy, we include a copy of the February 26, 1964 contract. There were two of these contracts, identical in every respect, one of which was executed by appellant Casteel and the other by appellees:

## "CONTRACT

"THIS CONTRACT entered into by and between Mrs. T. C. Gunning, Sr. and T. C. Gunning, Jr., for themselves and/or undisclosed principals, designated herein as GUNNING, and WIGGS INVESTMENT CO., INC., MRS. DOROTHY P. WIGGS and THE STATE NATIONAL BANK OF EL PASO, Executor of the ESTATE OF R. MARTIN WIGGS, JR., DECEASED, herein designated collectively as WIGGS,

### "WITNESSETH THAT:

"WHEREAS, Gunning wishes to buy all of the stock held by Wiggs in GUNNING-CASTEEL, INC., GUNNING-CASTEEL REALTY CORPORATION, and GUNNING-CASTEEL & WIGGS, INC., and

"WHEREAS, Gunning wishes to sell all of the stock held in WIGGS APPLIANCE COMPANY, INC., and

"WHEREAS, Wiggs wishes to sell the stock held by them and to buy the 145 shares of stock held by Gunning in WIGGS APPLIANCE COMPANY, INC., and

"WHEREAS, there is need to allow time for further study of the proposed disposition of the shares of GUNNING-CASTEEL CORPORATION held by Wiggs.

NOW, THEREFORE, in view of the mutual considerations involved, the parties hereto agree as follows:

"1. Gunning offers to buy for the sum of EIGHTY - FIVE THOUSAND, FOUR HUNDRED, TWENTY-SEVEN DOLLARS AND EIGHT CENTS ($85,-427.08) the TEN (10) shares of GUNNING-CASTEEL, INC., common stock held by the ESTATE OF R. MARTIN WIGGS, JR., DECEASED, and the THREE HUNDRED AND EIDHTY-FOUR (384) shares of such stock owned by WIGGS INVESTMENT CO., INC.

"2. Gunning offers to buy the EIGHTY (80) shares of GUNNING-CASTEEL & WIGGS, INC., stock held by the said Estate for the sum of FIFTY-SIX THOUSAND, SEVEN HUNDRED EIGHTY-FIVE DOLLARS AND SIXTY CENTS ($56,785.60).

"3. Gunning offers to buy FIVE (5) shares of GUNNING - CASTEEL REALTY CORPORATION for the sum of SEVEN HUNDRED, FORTY-THREE DOLLARS AND FIFTY CENTS ($743.50).

"4. If Gunning's offer is accepted under the terms hereof, Wiggs will buy ONE HUNDRED AND FORTY-FIVE (145) shares of WIGGS APPLIANCE COMPANY, INC., stock from Gunning for the sum of FORTY-THREE THOUSAND, SIX HUNDRED NINETY DOLLARS AND SEVENTY-FIVE CENTS ($43,695.75).

"5. Wiggs shall have the unencumbered right to determine if this offer shall be accepted by them.

"6. Wiggs will refrain from selling its stock described above for a period to and not earlier than March 16, 1964.

"7. Gunning will leave this offer open for a period to end not earlier than April 15, 1964.

"DONE THIS 26th day of February, 1964.

/s/ Mrs. T. C. Gunning, Sr.
 Mrs. T. C. Gunning, Sr.

/s/ T. C. Gunning, Jr.
 T. C. Gunning, Jr.

WIGGS INVESTMENT CO., INC.

By _____
 Dorothy P. Wiggs, President

THE STATE NATIONAL BANK OF EL PASO, EXECUTOR OF THE ESTATE OF R. MARTIN WIGGS, DECEASED

By _____
 Trust Officer
 /s/ Dorothy P. Wiggs
Mrs. Dorothy P. Wiggs "

We shall take up appellant Casteel's points of error in the order in which they appear in his brief.

■ Subdivision A of appellant Casteel's first point maintains that the trial court committed error in granting appellees' motion for instructed verdict. It is true that where an instructed verdict has been rendered the reviewing court must take as true the material evidence offered by plaintiff, and indulge every reasonable inference in his favor in deciding the motion and determining if a fact issue has been properly raised. We think the court acted correctly here, because it appears from the record that appellants do not attack the written contract or offer of February 26, 1964. There appears to be no pleading, verified or otherwise, denying the execution of said document or stating that it was without consideration or that the consideration had failed in whole or in part. (Rule 93, Texas Rules of Civil Procedure). Neither did plaintiff Casteel, in the court below, contend that he was induced to execute the said document by fraud, accident or mistake, or that it was incomplete or not intended as a complete agreement between the parties. He appears to make such contentions for the first time on appeal. The record indicates that plaintiff did not claim any defense to the February 26, 1964 written contract, but rather attempts to alter, vary or contradict it by asserting an alleged oral agreement of February 1, 1964, and that the written document was not sufficiently or properly executed. The defendants in the trial court asserted, as one ground for their motion asking for an instructed verdict, that the parol evidence rule prevented plaintiff from trying to alter, vary or contradict the written contract of February 26th. We have examined these contracts and find that they are identical offers by Mr. Casteel and the Gunnings to purchase the Wiggs stock. It will be noticed that these offers contained, among other things as mutual consideration, an agreement by the sellers of the Wiggs stock not to sell the stock before March 16, 1964, and the further agreement by the purchasers to leave said offers open until April 15, 1964. It was also stated by both offerors that Wiggs (meaning the sellers) shall have the unencumbered right to determine if the offer shall be accepted by them. As stated before, sellers did not sell until April 10th, at which time they sold to the Gunnings. It must also be remembered that the written contract was signed by Mr. Casteel some three weeks or more after he had entered into what he now claims to have been an oral agreement with reference to the purchase of the stock. There is no mention in this written offer or contract of February 26th of any prior agreement, oral or otherwise. The testimony in the Statement of Facts even indicates that plaintiff Casteel felt that the written contract replaced the old contract. Also, even if we take the statement of Mr. Casteel literally, wherein he attempts to maintain

that the February 26th offer was merely executed because there had been a change in the book value of the stock, still we are confronted with the realization that if it is or was only (and the terms of same certainly do not so indicate) a change of price agreement, still it must be described as a new contract or offer which would necessarily cancel out or merge prior agreements. Then, too, the oral contract is stated to have been made by Mr. Delk as agent for Mrs. Wiggs and Mr. Casteel. One written contract and/or offer of February 26th was signed by Mr. Casteel and Mrs. Wiggs, the other by appellees and Mrs. Wiggs, and, in our opinion, each is complete and unambiguous. It has long been established that the parol evidence rule is used to prevent extrinsic or oral testimony or evidence to vary or contradict a written contract, unless said contract is ambiguous or there is fraud, accident or mistake present. Under these circumstances, parol or extrinsic evidence is permitted so as to get at the intention of the contracting parties and determine what they really agreed to do. Further, the parol evidence rule has long been described as a rule of substantive law rather than one of evidence alone. Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184; Kingsbery v. Phillips Petroleum Company, 315 S.W.2d 561 (Tex.Civ.App., n. r. e.); 4 Williston on Contracts (3d ed., 1961) 631; 20 Am.Jur., Evidence, § 1100; 32A C.J.S. Evidence § 851. Lastly, this court, in Miami Petroleum Company v. Neal, 333 S.W.2d 876 (n. r. e.), stated clearly that the parol evidence rule in Texas is a rule of substantive law. In 2 McCormick & Ray, Texas Law of Evidence, 2d ed., § 1603, it is pointed out that the business world demands that written contracts be guarded against claims of inconsistent oral agreements. Of course, as the various texts and cases indicate, written instruments would soon become of little value in the business world if they could be varied, controlled or superseded by improper parol evidence. This portion of appellant Casteel's first point is therefore overruled.

In subdivision B of Point 1, appellant Casteel maintains that the alleged oral contract of February 1 and/or February 3, 1964 is binding and enforcible. We feel that this point must also be overruled because it is not controverted that the agreement or deal, or whatever it was, of February 1 and/or 3rd was a matter between Mr. Delk and Mr. Casteel only. Nowhere does it appear in the record that Mr. Delk had oral or written authority from either Mrs. Wiggs or The State National Bank to bind them to any agreement, transfer any stock or in any way close a deal for them. On the contrary, the record reveals that he was simply a broker trying to bring buyers and sellers to an agreement that could be consummated, but that he lacked the power to consummate it himself on behalf of any or all of the sellers. This is further evident from the record and purchase where it appears that he tried to sell or get an offer from various people for the Wiggs stock. Therefore, whatever transaction took place on February 1st or 3rd, it could not have been binding on any of the defendants here because there is no evidence whatever that they conferred such authority on Mr. Delk. For example, no power of attorney is alleged. Further, it is clear from the record that Mr. Casteel signed a written offer of February 26th without making any complaint at that time that it was incomplete or unsatisfactory. In fact he seems to raise these questions only on appeal.

There is no evidence, either, of ratification of any agreement made between Mr. Delk and Mr. Casteel. In fact, the record seems to indicate that the sellers of the Wiggs stock neither knew of the agreement, if any, or its terms, and there is no evidence of any act of ratification. On the contrary, the February 26th offer would, to us, rule such out in any event, as it was signed willingly and voluntarily by Mr. Casteel, and the check mentioned as having been given to Mr. Delk by Mr. Casteel was never cashed by anyone. Further, it is ex-

tremely doubtful that the Bank would or could delegate to any person outside the Bank authority to bind the Bank as Executor of the Estate of Mr. Wiggs. There is no evidence that the Bank ever delegated any authority to bind it or consummate any deal with reference to this stock. We hold, therefore, that there is no evidence of ratification of any agreement or agreements alleged to have been entered into by the parties before February 26, 1964.

■ Appellant Casteel also maintains that the February 26th written contract is incomplete because it was not signed by every party thereto, and that he (Mr. Casteel) did not intend the contract to be a completed agreement. Again, we do not believe this point has sufficient merit to prevent or destroy the application of the parol evidence rule. The record shows that all parties accepted the agreement, and although the Bank as Executor did not sign the February 26th document, it did later on, in accordance with the terms of the February 26th document, sell the stock controlled by it as Executor. We again mention that plaintiff signed the agreement, and complains of its inadequacy only on this appeal. The record shows that plaintiff has never contended that the February 26th agreement was ambiguous. Further exploring the parol evidence rule, we find discussions in 4 Williston on Contracts (3d ed., 1961) § 633; and in 32A C.J.S. Evidence § 902, p. 269, it is stated:

"It is of course necessary to the application of the parol evidence rule to contracts that there shall be a complete written contract between the parties * *; but it is not necessary that the contract be in any particular form, or that it all be contained in one paper, or signed by both parties; and a writing evidencing the whole of an agreement between the parties which has been delivered, accepted, and under which business has been transacted, cannot be varied by parol, even though it is not signed; * * *."

It has been held that a presumption exists that a written document is intended to be a complete agreement of the parties unless, on its face, the instrument itself rebuts the presumption. Guarantee Life Ins. Co. v. Davidson, 234 S.W. 883 (Tex.Com.App., 1921). We have before us clear and unambiguous contracts or offers, identical in form and content, one of which is signed by Mr. Casteel, plaintiff-appellant, and Mrs. Dorothy Wiggs, owner of part of the stock. Further, it must be taken into consideration that the said offer of the Gunnings was later consummated by Mrs. Wiggs, the Gunnings and the Executor-Bank.

■ We agree with appellees' position that the execution of the written contract by Mr. Casteel canceled out any previous agreements, oral, legal or otherwise, by waiver and abandonment as well as merger, and there are probably elements of estoppel also present. This is true because the February 26th offer or contract, signed by Mr. Casteel, was complete, unambiguous and conclusive of the matters contained therein, and does not mention or refer to any prior oral agreement or price changes. Plaintiff, as we have said before, neither pleaded nor offered evidence of fraud or accident or mistake during the trial.

If the February 26th written contract should not be binding, then, and only then, are we bound to consider whether the parties to the February 1st and/or 3rd contract had authority to consummate or close the deal. We have discussed this matter thoroughly and repeat that the record is void of any evidence of delegation of authority or power of attorney to Mr. Delk so as to enable him to consummate or close any deal with reference to any of the stock herein involved. It is not denied that he had authority to represent Mrs. Wiggs, but he had no authority to bind either Mrs. Wiggs or the Bank to any sale or transfer of the stock. With reference to the Executor (the Bank) there is no testimony from either the Bank or Mr. Delk, and no written evidence, of any authority. As a matter of fact there are cases holding that an inde-

pendent executor cannot delegate its discretionary powers. In fact, there is no evidence that plaintiff or intervenors ever contacted the Executor-Bank.

For the reasons set forth above there could not have been a jury question, because the matter in controversy here is not one of fact, but of law; there is no evidence that, on February 1st or 3rd, or at any time, Mr. Delk had any delegated authority from anyone to bind anybody, even if such authority could have been given him by the Executor-Bank; and finally, the contract of February 26th is, in our opinion, clear, unambiguous, and terminates and concludes any prior negotiations that may have been alleged. This contract or offer was carried out and the sale of the stock eventually made to appellees. We do not see any occasion for the use of a jury, and we bear in mind that we deal here with a complaint against the action of the trial court in granting an instructed verdict. But even granting and considering all the rights that, under these circumstances, accrue to appellants, we believe and hold that the trial court acted properly in granting such motion. In reaching this conclusion we have carefully resolved every doubt and construction of the testimony in favor of the appellant Casteel, and taken as true his material testimony.

In conclusion, we feel that appellant's first point, in all its subdivisions, must be overruled, as construing every part of the material record in favor of appellant we are still met with nothing but legal problems, which we feel we have sufficiently discussed. We believe that the February 26th contract and subsequent contracts were legal and effective. As such, they wiped out any prior dealings offered by and through parol evidence. Again it must be remembered that any prior agreements alleged or maintained were entered into by Mr. Casteel and a man with no authority to do other than represent the parties he claims to have represented, but who was totally without authority by power of at-

torney, delegation of authority, or otherwise, to bind anybody or close any deals. Therefore there was, in our opinion, no jury question present and we feel, too, that the trial court acted correctly in granting the motion for instructed verdict. Appellant's first point and all its subdivisions are therefore overruled.

In his second point appellant Casteel urges that the court erred in granting the motion to dismiss presented by defendant Velda W. Gunning, and in sustaining the special exception of Thomas C. Gunning, Jr., both of which relate to Court Four of plaintiff's second amended original petition detailing the by-law restrictions on the sale of stock. Appellant contends that the court was not authorized to (as he describes it) summarily dispose of this matter without giving plaintiff his day in court; also, that the by-laws require that the stock must first be offered to the corporation or, if any of the provisions are ambiguous, the matter should be submitted to the jury, and that the by-law provisions constitute a contract between various shareholders of the corporation and are enforcible as such; and lastly, that directors of the corporation, having knowledge of said restrictions, are in a fiduciary relationship to both the corporation and the other stockholders. We do not believe these points can be sustained for the following reasons.

In the first place, the first line of Article VII, entitled "Sale of Stock", under section 1, states as follows: "No stock in this corporation shall ever be offered for sale *to the public* by any of the stockholders without said stockholder so desiring to sell having first offered said stock for sale to the corporation itself * * *" (Emphasis supplied). It is immediately apparent that this provision applies to the sale of stock to the *public* by any stockholder. That is not the case here, as the stock herein involved was sold by and between stockholders only. We must agree with the contention of the appellees that the by-laws do not prohibit the sale of stock between stock-

holders and do not restrict the sale of stock to defendants, but that said provisions pertain only to sales of stock to outsiders—strangers to the corporation; in other words, the public. Therefore, we believe and hold that the trial court was correct in the action taken. If it was intended to maintain an equal balance of power, we have found nothing in the by-laws to prevent a gift by any stockholder to anyone, except relatives, the by-laws dealing only with sale. As stated above, we believe this was an attempt through the by-laws to keep outsiders or the public out of the corporation, a problem which we do not confront in this lawsuit. These provisions discussed and disposed of above apply only to the two realty corporations and are identical in the by-laws of each corporation. In other words we feel, and so hold, that the trial court was correct in sustaining the motion and special exceptions regarding the realty corporation by-laws discussed above.

We pass now to the provisions of the by-laws of Gunning-Casteel, Inc., the drug corporation. Article VIII of said by-laws provides, among other things, that "If any stock in the corporation is offered for sale by any officer-stockholder, said stock shall first be offered for sale to the corporation itself * * *" It is immediately apparent that section 2 of Article VIII specifically and carefully provides how an officer-stockholder can dispose of or offer his stock for sale. This is a clearly worded and specific provision and, we think, means exactly what it says. At the time of Mr. Wiggs' death he owned in his own name ten shares of stock in the drug corporation, and Wiggs Investment Co., Inc. owned 384 shares of stock in said corporation. The 384 shares of stock are alleged to have been subsequently reissued March 4, 1964 by certificates 133–A and 134–A, each for 192 shares of stock, the first certificate being issued to The State National Bank, Executor, and the second to Dorothy P. Wiggs. In discussing this matter, it must be remembered that restrictions on a stockholder's right to dispose of his stock must be strictly construed. There is no indication in this record that at the time of the sale, the Wiggs Investment Company was ever an officer-stockholder. The stocks were reissued by the above described certificates, and there is no evidence or proof that either the Bank or Mrs. Wiggs was an officer-stockholder in the corporation. Again we do not believe this provision is ambiguous, nor were any of the provisions here in controversy, in our opinion, meaningless or ambiguous. It is clearly set forth that an officer-stockholder must first offer his stock to the corporation itself and, if not accepted or purchased by said corporation, it may then, and only then, be offered to the public. All of these provisions, regarding both the two realty corporations and the drug corporation, must be construed as designed to protect the corporations against the intrusion of outsiders or the public. With reference to these provisions applying to sale of stock, these provisions must be construed in their entirety and meaning given to the words used therein. The by-laws of the drug corporation do not seem to prevent sales or transfers of stock within the company or among present stockholders. There are a number of cases from Texas and other jurisdictions that discuss this matter and construe these provisions as being designed to prevent the sale by a stockholder to outsiders who own no corporation stock. Kensinger v. McDavid, 380 S.W.2d 54 (Tex.Civ.App.); Pomilla v. Bumgardner, 326 S.W.2d 917 (Tex.Civ. App.). There are cases from other jurisdictions cited in the appellees' brief also holding that provisions of this nature are intended to prevent the sale of stock to an outsider or non-stockholder in the corporation. We do not believe the trial court committed error in disposing of this matter by special exceptions and motions to dismiss, even though they might be construed as general in their application, or content. This would be a procedural matter, and apparently did not concern the trial court and, if there was error, we deem it to be harmless.

For the reasons set forth above we believe that appellant Casteel's Point 2 and its subdivisions must be overruled, and again we call attention to the fact that the identical by-laws of the two realty corporations start out with the sentence quoted above to the effect that "no stock in the corporation shall ever be offered for sale to the public * * *" (with the conditions set forth); and the by-laws of the drug corporation, Gunning-Casteel, Inc., provide for the manner in which stock may be offered for sale by an officer-stockholder, and again the conditions necessary are subsequently set forth. Therefore, we do not believe the sale made to the defendants violated any of the by-laws, and we agree with the position of appellees that these by-laws were primarily intended to prevent the sale of stock in any of the three corporations to an outsider until certain provisions had been fulfilled. Finally, the by-laws of any of the three corporations do not prohibit or prevent the sale or transfer of stock between stockholders of the various corporations. Appellants' Point 2 and its subdivisions are therefore overruled.

 Appellants' Point 3 claims that the trial court erred in sustaining defendants' special exceptions to plaintiffs' cause of action relating to a constructive trust for five shares of stock in Gunning-Casteel Realty Corporation. We feel this point must also be overruled. There is no memorandum or written agreement in the record, the only evidence being the oral testimony of Mr. Casteel that he gave the five shares of stock to Mr. Wiggs in 1950, and Mr. Casteel stated that this was done because he had an agreement between Mr. Gunning and himself that they wanted to avoid a possible deadlock, and so felt that a third party should have a few shares, rather than all of the shares being equally distributed or divided between Mr. Casteel and Mr. Gunning. Mr. Casteel also testified that Mr. Gunning never transferred any five shares. This would seem more like a breach of contract between the two partners than a constructive trust. In the first place, Mr. Casteel's gift of five shares in the realty corporation was made in 1950, and apparently nothing else was ever done before Mr. Gunning's death some twelve or thirteen years later. The record does not show that Mr. Casteel objected to or protested this state of affairs. Also, it appears to us that this transaction, as related by Mr. Casteel, violates Article 3716, Vernon's Ann.Tex.Civ.St., commonly known as the "Dead Man's Statute". In any event, all we have is the fact that Mr. Wiggs had the five shares of stock, with only Mr. Casteel's proffered testimony, which we feel was probably inadmissible. Appellant Casteel did try to introduce a note found in Mr. Wiggs' possessions after his death. This note is headed: "Suggestions About My Estate", and is addressed "Dorothy", and stated with reference to the five shares of realty corporation stock as follows: "Sell Gunning-Casteel Realty Corporation stock to Mr. Casteel, it should be worth about $1,000.00". This note was undated and was no part of the will of R. M. Wiggs, deceased, and we think was properly excluded by the trial court. In any event, we think it has little or no legal effect, and that, as the description above set forth implies, it was only a suggestion. But had it been admitted, it does not seem to comport with the idea that the five shares were a gift, because the note suggests to the widow that the five shares be "sold" to Mr. Casteel. If this is true, it sounds a great deal more like something personally owned than something held by virtue of a constructive trust. It is suggested, and we think properly so, by appellees that the five shares of stock were simply a part of the estate of R. Martin Wiggs rather than a separate entity bearing the title of constructive trust. The disposition of the Wiggs estate is governed by the now probated will of R. Martin Wiggs, Jr. It is elementary that words of this nature, that are not within the will, called "suggestions" or "requests", are only that and are treated as precatory rather than mandatory statements, and are not binding. The State National Bank was Executor of this probated will and, as such,

in our opinion, had control of part of the five shares of stock. Concluding, we do not find the elements necessary to sustain appellants' position that Mr. Wiggs held the five shares of stock by virtue of a constructive trust. The necessary provisions and elements and actions are just not present. This point is accordingly overruled.

In Point 4 appellants complain of the action of the trial court in granting a motion in limine filed by defendant Velda Gunning, whereby plaintiff was instructed not to refer to the note (described above) left by Mr. R. Martin Wiggs, Jr., or the facts relating thereto. We believe that our discussion of the preceding point substantially disposes of this point. However, plaintiff claims that the procedure of the trial court was also wrong, but we do not find that the trial court committed procedural error in granting this motion to exclude what the trial court felt, as we do, was improper evidence, and the discussion thereof. It must be borne in mind that the cause of action as stated was primarily one brought by the plaintiff based on an alleged oral contract of February 1st or 3rd, 1964. Also, it is stated in his brief that the corporation was formed in 1950 and the stock *issued* as follows: " * * * R. M. Wiggs, Jr., 5 shares". Then the brief goes on to state that based on a promise and agreement, Mr. Casteel transferred five shares of his stock to Mr. Wiggs, which was without consideration from Mr. Wiggs, and constituted a gift. Lastly, there is no evidence, implied or expressed, that Mr. Wiggs was ever to resell the stock to Mr. Casteel, other than the inadmissible note found after his death. Mr. Casteel's own testimony states that the stock was given to Mr. Wiggs as the result of an agreement between Mr. Casteel and Mr. Gunning. There is no evidence that Mr. and/or Mrs. Wiggs agreed to accept the stock as a constructive trust. As a matter of fact, the indications are to the contrary, because Mr. Wiggs left a note suggesting that his survivor sell the stock to Mr. Casteel. Lastly, there is no contention that the will of Mr. Wiggs was

ambiguous or incomplete, so as to create a need for said note in order to explain or complete the will.

The contention that the motion or objection therein is too general does not, in our opinion, have sufficient merit. It sets out several grounds such as that, the note having been ruled inadmissible, it would be highly inflammatory and prejudicial, etc., and the motion was granted rather than overruled. There are authorities holding that if a motion granted by the court is considered to be general, it is presumed that some valid ground was apparent to the court. Wigmore on Evidence (2d Ed.) § 18, page 184; McCormick & Ray, Texas Law of Evidence, § 25, page 24. This point is overruled.

In Point 5 appellant takes exception to the action of the trial court in sustaining a number of special exceptions to plaintiff's pleadings, claiming that this action had the cumulative effect of depriving plaintiff of the right to properly and clearly describe his cause of action. We have examined this matter and do not find that the trial court was in error in sustaining exceptions to various bits of language from the pleading of the plaintiff. This point is overruled.

We now pass to the points of error presented by the intervenors. On September 21, 1964, the trial court held a hearing upon special exceptions filed by the parties. It is alleged that there were no exceptions leveled against intervenors' first amended original petition in intervention sustained by the court. At this same hearing the trial court set the case for trial on October 26th. The court further directed plaintiff and intervenors to file any amended pleadings on or before October 5, 1964, and the defendants to file their amended pleadings on or before October 14th. The intervenors did not amend their pleadings, claiming that since no exception had been sustained against them, they did not have to do so, and therefore filed no amended or supplemental pleadings before the date set as a deadline by the trial court. On October

13th Tom C. Gunning, Jr., The State National Bank, and Dorothy Wiggs excepted to intervenors' amended petition, alleging that it did not state a cause of action. All defendants on this same date filed an unsworn pleading described as "Motion to Strike and Dismiss Intervenors' First Amended Original Petition in Intervention". On October 14th defendant Velda Gunning excepted to the petition of the intervenors. Intervenors filed their second amended original petition October 16, 1964, and on October 21st all defendants filed a motion to strike said petition because of late filing It is stated that this motion did not contain any statement that the defendants were surprised by such second petition of intervenors. Then intervenors and defendants filed supplemental answers. On October 26th, which was the date of trial, the trial court dismissed intervenors' second amended original petition for late filing, and also dismissed intervenors' supplemental petition and refused to grant intervenors leave to file a trial amendment setting up new matters. The trial court then dismissed intervenors' first amended original petition, based on the motion to strike and dismiss filed by defendants.

Intervenors contend that they had a mandatory right to amend their pleadings in order to meet the defendants' exceptions and motion to strike, claiming that the court erred in its action and urging that appellees did not claim surprise. In these pleadings the intervenors took the same position as plaintiff, claiming violation of the by-laws and urging the enforcement in accordance with their interpretation. They also sought to plead that there were deficiencies and irregularities in the attempted transfers of stock, in that the stock certificates were not properly executed and were not properly transferred on the books of the company and did not contain allegedly necessary restrictions, and that by virtue of his position as an officer and director of the corporation, Thomas C. Gunning, Jr. had knowledge of all these things and that, therefore, the stock held by him should be designated as held under a constructive trust, and that he should be described as a constructive trustee for the corporation.

The appellees maintain that on September 21, 1964 the trial court considered all pending matters, sustained certain exceptions to alleged by-law violations made by plaintiff (which were similar to those asserted by intervenors) and pointed out that the trial court gave intervenors until October 5th to file any further pleadings or amendments. The intervenors did not file any further pleadings or amendments within the time specified, maintaining that they did not have to do so because no exceptions had been sustained against intervenors' pleadings. Rule 166, T.R.C.P., authorizes the trial judge to set the time within which amendments to pleadings will be allowed, and states that when the trial judge issues such order, it shall control unless modified by the court. Intervenors rely upon and discuss Rule 63, T.R.C.P., and cite authorities which they claim support their position.

We believe that the five points of error presented by intervenors must be overruled. In support thereof appellees point out the language used by our Supreme Court in the case of Provident Life & Accident Ins. Co. v. Hazlitt, 147 Tex. 426, 216 S.W.2d 805. The court in that case seems to give emphasis to that portion of Rule 166 providing that the trial court's orders (pre-trial) are controlling. This matter is commented on by Professor E. Wayne Thode, 35 T.L.R., page 381 et seq., where he states that in his opinion the pre-trial order under Rule 166 must take precedence over Rule 63, and cites the Hazlitt case (supra) as authority. Appellees point out that after the ruling of the Supreme Court in the Hazlitt case, Rules 63 and 166 were amended, and in another and later article Professor E. Wayne Thode (41 T.L.R. 545 at page 551) states as follows:

"Rules 63 and 166 were amended, effective January 1, 1961, to make it quite clear that after a pretrial order is entered,

amendments of the pleadings can be made only pursuant to the pretrial order, or with leave of court. This conclusively eliminated the contention that a party was as a matter of right entitled to amend his pleadings freely until within seven days of trial, thereby possibly rendering nugatory a previous pretrial conference and its resulting order."

The same interpretation is found under Comments to Rule 166, found in Franki's Vernon's Annotated Texas Rules, 1964, Pocket Part, page 158 (now found on pages 180, 181, 182 of the 1965 Pocket Parts). Here, the author states as follows, at page 182:

"Now, under Rule 166 the trial court may not only specify by pre-trial order what amendments may be made but also 'the time within which same may be filed.' The final date for filing amendments as fixed by the order may be more than seven days before trial, and thereafter, under Rule 63 as now changed, amendments may be made only with leave of court. In other words, in this respect the conflict or apparent conflict between Rule 63 and Rule 166 has been eliminated. While the right to file amended pleadings up to the date of the pre-trial conference has not been denied, the hand of the trial judge in limiting amendments by means of a pre-trial order has been strengthened. He may cut off the filing of amended pleadings without leave of court at a date more than seven days before trial, and thus avoid the necessity for postponement of trial in most cases on account of belated amendments and exceptions to pleadings of a material and significant character."

It should be recalled at this point that the matters contained in the intervenors' pleadings related to the same by-laws controversy as urged by the plaintiff, and have been disposed of by both the trial court and this court. The remainder of intervenors' pleadings, as stated above, apply to technical difficulties which could not, in our opinion, afford intervenors any right of action, as they were not shown to be harmful to intervenors, were not shown to be harmful to the corporation, and constituted a matter between buyers and sellers.

It is also urged by intervenors that the motion to strike and dismiss was a general demurrer and was not sufficient to comply with the summary judgment procedure. It has been held that the appellate court will not and should not reverse the dismissal of a cause of action because of technical procedural irregularities where the pleadings dismissed did not state any cause of action; Kelly v. Wright, 144 Tex. 114, 188 S.W.2d 983, the court there saying that it would be a futile and useless procedure to reverse the judgment of the trial court, even though the exceptions were too general and constituted a general demurrer, because it appeared from the pleadings that the petitioners could not, in any case, allege or present a valid cause of action. See also Presley v. City of Odessa, 263 S.W.2d 293 (Tex.Civ.App.); Anthony v. Creech, 303 S.W.2d 414 (Tex.Civ.App.). We have examined intervenors' pleadings and proffered pleadings and cannot discern where they asserted or could assert any cause of action in accordance with our previous discussion of the matter. Their allegation with reference to the by-laws is the same as that urged by the plaintiff and presents no cause of action. With respect to their objection to the manner of the transfer of stock and any deficiencies therein, intervenors have not explained, and it does not appear, how such could or would be of any interest or harm to the intervenors. The intervenors do not assert in what manner a change in the number of shares of stock held by one family would be of any harm to either the intervenors or the corporation. Intervenors urge, also, that certain stock certificates were not properly endorsed; that the transfer of certain shares was not recorded on the stock transfer books of the corporation; that certain stock certificates were not signed by the President of the corporation, although not claiming that

there was any duplication of issue or dilution of the value of the stock. It would seem that any or all of these alleged irregularities could not result in any harm to intervenors, and were matters of concern primarily between the buyers and the sellers. Intervenors' points are all overruled.

 During the pendency of this appeal, ten of the original intervenors filed their application to dismiss this appeal as far as they are concerned. This application is not contested and therefore is granted, but does not, of course, affect the appeal of the three remaining intervenors.

Appellants' points are all overruled, and the decision of the trial court is affirmed.

CLAYTON, J., not sitting.