COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



VERMONT INFORMATION
PROCESSING, INC.,


 Appellant,


v.


MONTANA BEVERAGE
CORPORATION,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-06-00094-CV
 


Appeal from the


County Court at Law No. 6 


of El Paso County, Texas 


(TC# 2004-4861)



O P I N I O N


 Appellant Vermont Information Processing, Inc. ("VIP") appeals the trial court's entry of 
summary judgment in this breach of contract action in favor of Appellee Montana Beverage
Corporation ("MBC"). Because genuine issues of material fact remain, we reverse the trial court's
judgment and remand the case to the trial court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

 VIP filed this breach of contract action against MBC on November 12, 2004. VIP's petition
alleged that the parties had agreed to a computer equipment and software lease for a term of sixty
months, commencing in August 1999. VIP further alleged that MBC had breached that agreement
by failing to make the final eight monthly payments and failing to pay the termination or "buy-out"
fee and accrued interest.

 In April of 1999, VIP and MBC negotiated a computer hardware and software upgrade for
MBC's warehouse. The parties exchanged faxes discussing finance terms, interest rates, monthly
payments, and equipment specifications. On April 22, 1999, the parties signed a "License
Agreement" specifying the terms under which MBC would be able to use VIP's computer software
in its wholesale beverage distribution business.

 On April 26, 1999, the parties signed another document (the "April Document")
memorializing the result of the negotiations to that point. The April Document is printed on VIP
letterhead and states as follows:

Option 2: New AS/400 Model 170



 The following is a description of the hardware and software proposed for the upgrade
of your existing IBM AS/400 Model 200 (9402-601DA). Your current AS/400 has
a 11.6 CPW rating, 2GB of Disk and 16MB of memory. The new configuration for
the Model 170 will have a 2291 Processor with a 25 CPW rating for interactive
processing and 115 CPW rating for batch processing, 16GB of disk with mirroring
and 128MB of memory. 


The April Document then lists all the computer equipment and software for the upgrade, with
purchase price, warranty, and maintenance terms for each item. On the second page, several
additional upgrade options are listed. For example, VIP could provide "inventory scanning
handhelds," at a fixed price, for use in MBC's warehouse.

 On page three, VIP provided three payment options. The first payment option called for a
one-third software deposit and a 10 percent hardware deposit "Due when the VIP contract is signed,"
with the other 90 percent of the hardware payment due at installation, and the remaining software
payments (one-sixth of the balance each) due each month over the next four months. Under the
second and third payment options, VIP would finance the transaction. Under either financing option,
a down payment would be due when the contract was signed and the remainder of the balance would
be paid in sixty equal monthly payments. Each financing option also provided for a "Buyout upon
Termination of Lease." (1)

 The document continued:

 Payment for all equipment is due upon receipt of that equipment. An invoice will be
furnished in time for arrival of that equipment at your location. Any invoices that
remain unpaid after 30 days from invoice date will be assessed a daily finance charge
of 12% per annum that will be due with payment of the invoice. 


 The cost of the software includes 200 hours for software preparation, conversion of
the data, training and on-site cutover. Distributors your size average between 400-450 hours, additional hours beyond the 200 are billed at $100.00 per hour. Based on
Montana Beverage's size and configuration, the installation will be 350 hours. 
Please budget for the additional 150 hours ($15,000). Also included in the cost of
the software is airfare, auto rental, lodging and meals for two trips to El Paso for one
VIP representative. 


 You should allocate ($250-500) for shipping charges, ($1,000) to purchase tapes, and
($2,100) to purchase training videos. 


 If you reside in New York, Ohio, New Jersey, California, Massachusetts or Vermont
sales taxes will be added to above amount and remitted by VIP. All other applicable
taxes are your responsibility and should be paid to the proper authorities.


 VIP bases its breach of contract action on both the April Document and a third document,
the "Computer Equipment Lease," dated August 1, 1999 (the "August Document"). The August
Document is not signed by either party, but is much more detailed regarding the terms of the lease
agreement. Under the August Document, the lease was to begin on August 1, 1999, and end on July
31, 2004. Other terms included the conditions under which MBC had a right to use the equipment
provided, that MBC had no right to make any alterations to the equipment without VIP's written
consent, that MBC was responsible for the equipment's maintenance and repair, that MBC was
responsible for any loss or damage to the equipment, that MBC would insure the equipment against
loss or damage caused by fire, and the conditions under which the lease would be in default and what
remedies were available. (2)

 According to the summary judgment record, VIP delivered equipment to MBC on August 1,
1999. MBC admits in its appellate brief that, beginning in August 1999, it made monthly payments
to VIP and that the payments continued for fifty-two months thereafter. At least once during the
payment period, MBC changed payment options and monthly payment amounts. (3) MBC stopped
making monthly payments in December of 2003.

 VIP filed suit, alleging that MBC breached the agreement as to the eight remaining payments,
the buyout payment due at the termination of the lease, and interest. MBC filed a motion for
summary judgment on both "traditional" and "no-evidence" grounds, asserting (1) that there was no
evidence of an enforceable contract between the parties and (2) several affirmative defenses. The
trial court granted MBC's motion on March 28, 2006, without specifying its grounds for doing so. 
VIP appeals.

DISCUSSION

 In two issues, VIP challenges the trial court's decision to grant MBC's hybrid motion for
summary judgment. Because the trial court did not specify the grounds upon which it granted the
motion, we will affirm, if any ground asserted has merit. Western Invs., Inc. v. Urena, 162 S.W.3d
547, 550 (Tex. 2005). Under Texas Rule of Civil Procedure 166a(b), MBC argued there was no
written lease contract, an essential element of VIP's claim. MBC also asserted several affirmative
defenses, which it alleged were established as a matter of law. First, MBC argued that, if there was
in fact a contract between the parties, the lease was unenforceable as a violation of the statute of
frauds, under Texas Business and Commerce Code section 26.01(b)(6), because it was an obligation
that was not to be performed within a year. Second, MBC alleged that the contract was for the sale
of goods with a value of more than $500, so that it was in violation of the statute of frauds contained
in Texas Business and Commerce Code section 2.201. Third, MBC argued that the April Document
is ambiguous as to the payment and buyout options. Finally, MBC argued that VIP's cause of action
is barred by the statute of limitations. See Tex. Civ. Prac. & Rem. Code Ann. § 16.004. Under
Texas Rule of Civil Procedure 166a(i), MBC argued that there was no evidence of a contract
between the parties.

 The standard of review for a traditional summary judgment asks whether the movant (MBC)
carried the burden of showing that there is no genuine issue of material fact, so that judgment should
be granted as a matter of law. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex.
2005); De Santiago v. West Tex. Cmty. Supervision & Corrs. Dep't, 203 S.W.3d 387, 398 (Tex.
App.--El Paso 2006, no pet.). Summary judgment is proper, if the defendant disproves at least one
element of each of the plaintiff's causes of action, D. Houston Inc. v. Love, 92 S.W.3d 450, 454
(Tex. 2002), or if it establishes all elements of an affirmative defense to each claim. Shah v. Moss,
67 S.W.3d 836, 842 (Tex. 2001). Once the movant establishes a right to judgment as a matter of
law, the burden shifts to the nonmovant to produce evidence raising a genuine issue of material fact. 
Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex.
1979). When reviewing a summary judgment, we take as true all competent evidence favorable to
the nonmovant, and we indulge every reasonable inference and resolve any doubts in the
nonmovant's favor. Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002) (citing
Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997)).

 Rule of Civil Procedure 166a(i) permits a party to move for a no-evidence summary
judgment "without presenting summary judgment evidence" and requires the moving party to state
that there is no evidence to support one or more specific elements of a claim or defense. Tex. R.
Civ. P. 166a(i). A no-evidence motion for summary judgment is essentially a pretrial directed
verdict, and we apply the same legal sufficiency standard of review. King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 750-51 (Tex. 2003). The party moving for a no-evidence summary judgment must
specifically state the elements as to which there is no evidence. See Tex. R. Civ. P. 166a(i); Aguilar
v. Morales, 162 S.W.3d 825, 834 (Tex. App.--El Paso 2005, pet. denied). The burden then shifts to
the nonmovant to produce summary judgment evidence raising a genuine issue of material fact
regarding each element challenged in the motion. Aguilar, 162 S.W.3d at 834. We view the
evidence in the light most favorable to the nonmovant, and we must disregard all contrary evidence
and inferences. King Ranch, 118 S.W.3d at 751. A genuine issue of material fact is raised if the
nonmovant produces more than a scintilla of evidence regarding the challenged element. Id. There
is not a scintilla of evidence when the evidence is so weak as to do no more than create a mere
surmise or suspicion of material fact. Ianni v. Loram Maint. of Way, Inc., 16 S.W.3d 508, 513 (Tex.
App.--El Paso 2000, pet. denied).

 In Issue One, VIP asserts that the trial court erred in granting MBC's traditional motion for
summary judgment, because MBC has not conclusively negated at least one element of VIP's cause
of action and has failed to establish conclusively all the elements of any of its affirmative defenses.

 A breach of contract claim consists of the following elements: (1) a valid contract; (2) the
plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the
plaintiff was damaged as a result of the breach. Critchfield v. Smith, 151 S.W.3d 225, 233 (Tex.
App.--Tyler 2004, pet. denied). A valid and binding contract is formed by: (1) an offer; (2) an
acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each
party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be
mutual and binding. Id. (citing Wal-Mart Stores, Inc. v. Lopez, 93 S.W.3d 548, 555-56 (Tex. App.--Houston [14th Dist.] 2002, no pet.)). Whether the parties intended to enter into an agreement is
generally a question of fact. Meru v. Huerta, 136 S.W.3d 383, 390 (Tex. App.--Corpus Christi 2004,
no pet.). Whether a particular agreement is an enforceable contract is generally a question of law. 
Id.

 MBC has only challenged the first element of VIP's cause of action. MBC argues there is
no enforceable contract between the parties, because the April Document lacks certain essential
terms and is merely an agreement to agree in the future. MBC also contends the August Document
is not an enforceable contract, because it is not signed by the parties and is therefore in violation of
the statute of frauds. See Tex. Bus. & Comm. Code Ann. § 26.01(b)(6). VIP counters that the April
Document is an enforceable contract, as it contains all the essential elements of the agreement. In
the alternative, VIP argues that the parties' performance under the August Document excepts it from
the statute of frauds under section 26.01(b)(6). We will address the April Document first.

 To be legally binding, a contract's terms must be sufficiently definite that a court can
understand what the promisor undertook. T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d
218, 221 (Tex. 1992). The material terms of the contract must be agreed upon before a court can
enforce the contract. Id. If the agreement upon which the plaintiff relies is so indefinite as to make
it impossible for the court to determine the legal obligations of the parties, it is not an enforceable
contract. Searcy v. DDA, Inc., 201 S.W.3d 319, 322 (Tex. App.--Dallas 2006, no pet.). In addition,
the parties must have had a meeting of the minds and communicated consent to the agreement. Id.

 What terms are "material" to a contract should be determined on an agreement-by-agreement
basis. T.O. Stanley Boot Co., 847 S.W.2d at 221 ("Each contract should be considered separately
to determine its material terms."). Where an essential term is left open for future negotiation, there
is no binding contract. Id. The rules regarding indefiniteness of the material terms of a contract are
based on the concept that a party cannot accept an offer, and thereby form a contract, unless the
terms of the contract are reasonably certain. Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22
S.W.3d 831, 846 (Tex. 2000) (quoting Texas Oil Co. v. Tenneco Inc., 917 S.W.2d 826, 830 (Tex.
App.--Houston [14th Dist.] 1994), rev'd on other grounds, 958 S.W.2d 178 (Tex. 1997)).

 The record shows the April Document is signed by representatives of both entities. However,
the document refers to the hardware and software listed as that "proposed" for MBC's system
upgrade. The additional software options listed on page two are also referred to as proposals. The
document does not identify a term for the lease, other than an option for sixty monthly payments, nor
does it provide a beginning or ending date. For a court to enforce a lease agreement, the agreement
must identify when the lease is to begin and end. Without such terms, it is impossible for a court to
determine what obligations the parties have undertaken. As such, the April Document appears to
be VIP's proposal or offer to upgrade MBC's computer system. Therefore, it is not an enforceable
written contract and is not evidence that there is a valid and enforceable agreement between the
parties. (4) See Pine v. Gibraltar Sav. Ass'n, 519 S.W.2d 238, 244 (Tex. Civ. App.--Houston [1st Dist.]
1974, writ ref'd n.r.e.) (where an essential term is open for future negotiation, there is no binding
contract).

 MBC contends that the August Document is also not an enforceable contract, because it does
not satisfy the requirements of the statute of frauds. Whether a contract falls within the statute of
frauds is a question of law. Bookout v. Bookout, 165 S.W.3d 904, 907 (Tex. App.--Texarkana 2005,
no pet.). A contract which is not to be performed within one year from the date of making the
agreement is subject to the statute's requirements. Tex. Bus. & Comm. Code Ann. § 26.01(b)(6). 
According to the August Document, the lease would commence on August 1, 1999, and end five
years later, on July 31, 2004. Since a five-year lease cannot be completed within one year, the
agreement was subject to the statute of frauds. See id. Such an agreement must be written and
signed by the party to be charged with the promise or agreement. Id. at § 26.01(a). Because MBC,
the party to be charged in this case, did not sign the lease, the contract is unenforceable, unless an
exception to the statute of frauds applies.

 The parties' partial performance under the agreement removes it from the requirements of
the statute of frauds. See Bookout, 165 S.W.3d at 907. The partial performance must be
"unequivocally referable to the agreement and corroborative of the fact that a contract actually was
made." Id. (quoting Exxon Corp. v. Breezevale, Ltd., 82 S.W.3d 429, 439 (Tex. App.--Dallas 2002,
pet. denied)). To establish the partial performance exception, the actions relied upon "must be such
as could have been done with no other design than to fulfill the particular agreement sought to be
enforced; otherwise, they do not tend to prove the existence of the parol agreement relied on by the
plaintiff." Id. at 907-08.

 Whether the performance was "unequivocally referable" is generally a question of fact. Id.
at 908 (citing Barbouti v. Munden, 866 S.W.2d 288, 295 (Tex. App.--Houston [14th Dist.] 1993, writ
denied)). In addition, whether the performance that has occurred is sufficient to establish the
exception is a question of fact. Id. at 910 (citing Fluellen v. Young, 664 S.W.2d 776, 781 (Tex.
App.--Dallas 1983, no writ)). Therefore, we must determine whether there is evidence in the
summary judgment record to raise a genuine issue of material fact on the issue of partial
performance.

 In response to MBC's motion for summary judgment, VIP produced an affidavit by Daniel
Brynes, the manager of VIP. Brynes states that VIP provided equipment to MBC pursuant to the
August Document. (5) MBC made an "initial payment" on the lease, as well as monthly payments in
August, September, October, and November of 1999. According to Brynes, MBC changed its
payments to the plan outlined in the April Document titled "VIP Finance Option with installation
hours." (6) Thereafter, MBC continued to make monthly payments for a total of fifty-two months. 
MBC's decision to change the finance option in November of 1999 is also evidenced by a VIP
invoice noting the change and making it retroactive to the beginning of the lease in August of 1999. 
The record also contains a copy of a "License Agreement" executed April 22, 1999, and signed by
both parties. There is no indication in the record, and MBC does not argue, that these actions were
taken with any objective other than to fulfill the agreement at issue. (7)

 Viewed in the light most favorable to VIP and indulging all inferences in the nonmovant's
favor, we hold that this evidence raises a genuine issue of material fact on the issue of partial
performance by the parties. In light of this evidence, MBC has failed to establish its affirmative
defense under the statute of frauds, and VIP has carried its burden to raise a genuine issue of material
fact on the challenged element of its breach of contract cause of action.

 MBC also asserts a statute of limitations defense. (8) The Civil Practice and Remedies Code
provides a four-year statute of limitations for a breach of contract action. See Tex. Civ. Prac &
Rem. Code Ann. § 16.004. A cause of action for breach of contract generally accrues when the
contract is breached. Slusser v. Union Banker Ins. Co., 72 S.W.3d 713, 718 (Tex. App.--Eastland
2002, no pet.). Where a contract calls for periodic payments of a fixed amount, a cause of action
accrues at the time of a missed payment. Id. 

 The summary judgment record indicates MBC made monthly payments to VIP for fifty-two
months, as though this were an installment agreement whereby MBC was obligated to make monthly
payments. MBC stopped making monthly payments to VIP in December 2003, with eight monthly

payments remaining. VIP filed suit on November 12, 2004, less than a year after a cause of action
for missing installment payments accrued. Therefore, MBC has not proved as a matter of law that
VIP's cause of action accrued outside the statute of limitations, so it is not entitled to summary
judgment on this ground. See Love, 92 S.W.3d at 454.

 As MBC has failed to establish the elements of its affirmative defenses as a matter of law and
a genuine issue of material fact exists as to whether an enforceable contract exists, summary
judgment was improper under Texas Rule of Civil Procedure 166a(b). See id. Accordingly, we
sustain Issue One.

 In Issue Two, VIP contends summary judgment was not properly granted under Texas Rule
of Civil Procedure 166a(i). MBC's final ground for summary judgment was that there was "no
evidence" of a computer equipment and software lease. We have already determined that there are
genuine issues of material fact as to the existence a contract between MBC and VIP; we therefore
also hold that there is more than a mere scintilla of evidence in support of the first element of VIP's
cause of action. Therefore, summary judgment was also not properly granted under Rule 166a(i). 
King Ranch, 118 S.W.3d at 751. Issue Two is also sustained.

 Having determined that none of the grounds advanced for summary judgment has merit, we
reverse the trial court's judgment and remand the case for further proceedings.


 KENNETH R. CARR, Justice


June 7, 2007


Before Chew, C.J., McClure, and Carr, JJ.

1. The two financing options differed only in amounts, depending on whether certain "installation hours" would
be financed. 
2. The August Document also contains an "integration clause" making it the sole representation of the parties'
agreement. The clause states, "ENTIRE AGREEMENT: This instrument and the aforementioned schedules constitute
the entire agreement between [VIP] and [MBC], and it shall not be amended, altered, or changed except by a written
agreement signed by the partie[s] hereto." Neither party argues that this is a completely integrated agreement for parole
evidence purposes, which would prevent consideration of prior terms or agreements. See Hayes v. Rinehart, 65 S.W.3d
286, 288 (Tex. App.--Eastland 2001, no pet.).
3. The initial amounts of MBC's monthly payments were exactly equal to the amount set forth in the first
financing option (the "without-installation-hours" option) described in the April Document. After the change, the
monthly payments were exactly equal to the amount set forth in the second financing option (with such hours) therein. 

4. MBC also moved for summary judgment on the basis that the April Document was unenforceable, because
the payment terms were ambiguous. According to the document, MBC had the option to pay a lump sum at the time the
equipment was delivered or make monthly payments financed by VIP. As we have determined that the April Document
was only a proposal and not an enforceable agreement, we will not address the alleged conflict in MBC's payment
obligation. We note, however, that when a contract term is subject to two or more reasonable meanings, resolution of
the ambiguity is a fact question for the jury to determine the parties' intent. See Columbia Gas Transmission Corp. v.
New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). Summary judgment is not proper when a genuine issue of
material fact exists. See Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005).
5. According to MBC's brief, Brynes's affidavit indicated that VIP "provided the equipment to [MBC] pursuant
to the terms of the [April 26, 1999] Agreement." This is a misstatement of the appellate record. Brynes's affidavit states,
in pertinent part, "Attached hereto as Exhibit 'A' and incorporated herein . . . for all purposes is a true and correct copy
of the Agreement dated August 1, 1999, executed between [VIP] and [MBC] in this lawsuit (the 'Agreement'). [VIP]
provided the equipment to [MBC] pursuant to the terms of the Agreement" (emphasis supplied).
6. It is worth noting here that, according to VIP invoices evidencing the change in MBC's finance options,
MBC's payments matched the VIP-financed terms expressed in the April Document. 
7. Although MBC does not pursue the argument in its appellate brief, in its motion for summary judgment, MBC
also argued that the agreement was unenforceable under the Uniform Commercial Code's statute of frauds. See Tex. 
Bus. & Comm. Code Ann. § 2.201(a). Under the U.C.C. statute of frauds, "a contract for the sale of goods for the price
of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that
a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . ." 
Id. A "sale" is further defined as ". . . the passing of title from the seller to the buyer for a price." Tex. Bus. & Comm.
Code Ann. § 2.106(a). A "lease" refers to "a contract by which one owning such property grants to another the right
to possess, use and enjoy it for a specified period of time in exchange for periodic payment of a stipulated price, referred
to as rent." Franklin v. Jackson, 847 S.W.2d 306, 308 (Tex. App.--El Paso 1992, writ denied) (emphasis in original). 
The August 1, 1999, "Computer Equipment Lease" is not subject to the requirements of section 2.201(a), as it is not a
sale of goods. VIP retained ownership of the equipment, so the agreement is a lease. Assuming arguendo that the
agreement were a sale of goods covered by section 2.201(a), the same partial performance exception as described above
would also remove it from the requirements of the U.C.C. statute of frauds. See Rodriguez v. Klein, 960 S.W.2d 179,
186 (Tex. App.--Corpus Christi 1997, no pet.). 
8. MBC's argument that Texas Civil Practice and Remedies Code section 16.004 barred VIP's cause of action
is based on a determination that the April Document was an enforceable agreement. MBC asserts that the April
Document required a lump sum payment on August 1, 1999, the day VIP delivered the equipment. The document also
contains two "VIP Financed" payment options, which include monthly payments. As we have previously determined
that the April Document was nothing more than a proposal, none of the payment options described there is determinative
of MBC's statute of limitations defense.