

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00420-CV

---

Richard C. Poe, II, Appellant

v.

Paul O. Sergent, Jr., Individually, as an Officer of Poe Management, Inc., and as a Co-Trustee of the Dick Poe Estate Trust; Anthony E. Bock, Individually, as an Officer of Poe Management, Inc., as Co-Independent Executor of the Estate of Richard C. Poe, Deceased, and as Co-Trustee of Dick Poe Estate Trust; Karen G. Castro, Individually, as an Officer of Poe Management, Inc.,as Co-Independent Executor of the Estate of Richard C. Poe, Deceased, and as Co-Trustee of Dick Poe Estate Trust et al., Appellees

---

On Appeal from the Probate Court No 1
El Paso County, Texas
Trial Court No. 2015CPR00818

# MEMORANDUM OPINION

In this permissive interlocutory appeal, Appellant Richard C. Poe, II challenges the partial summary judgment granted in favor of Appellees, Paul O. Sergent, Jr., Anthony E. Bock, and Karen G. Castro. We agree with the trial court that the bylaws which are the basis of Richard's dismissed claims are missing material terms and as a result are unenforceable. Finding no error, we affirm.

## I. FACTUAL BACKGROUND

This case has a long and complex history. In the more than 10 years since it was filed, there has been a two-part jury trial, an appeal to this Court, an appeal to the Texas Supreme Court, amendments to the petition after remand, a partial summary judgment, and now this interlocutory appeal. The full factual background of this case was recited in the prior opinions. *Matter of Estate of Poe*, 591 S.W.3d 607, 646 (Tex. App.—El Paso 2019), *aff'd in part, rev'd in part*, 648 S.W.3d 277 (Tex. 2022). We limit our discussion of the facts to those relevant to the issues before us now.

### A. PMI share issuance

Richard C. "Dick" Poe incorporated Poe Management, Inc. (PMI) in 2007. At the time of the relevant events in this case, PMI served as the general partner of and controlled the Family Limited Partnership, Dick Poe Imports, L.P., Poe Investments, Ltd., Dick Poe Motors, L.P., and Dick Poe Dodge, L.P. Richard, Dick's son, was the sole shareholder of PMI and held 1000 shares. However, Dick was the president and retained control of PMI and the corporations of which it was general partner at first through an irrevocable proxy giving him the right to vote Richard's shares and then, later, by being appointed each year as the sole director.

Dick, who was in failing health, sought to ensure that Richard would not control PMI. On May 1, 2015, Dick, as the sole director of PMI and on the advice of his attorney and PMI's

2

secretary, Paul O. Sergent, signed a unanimous consent for PMI to issue 1,100 shares to himself in exchange for $3,209,205.00. Dick paid for the shares on May 6, 2015. The issuance had the effect of making Dick the majority shareholder, with a 52% interest in PMI. On May 16, 2015, Dick died, and his shares passed to his estate of which Bock and Castro are co-executors. As co-executors, Bock and Castro then elected themselves to PMI's board of directors.

### B. Trial

After Dick's death, Richard learned about the share issuance. Less than a month later, Richard filed the underlying lawsuit (on behalf of himself individually and PMI) against Sergent, Bock, and Castro individually and in their respective roles as officers of PMI and executors of the estate. Richard asserted that the issuance of shares to Dick was invalid for three reasons: because it violated § 21.418 of the Business Organizations Code (pertaining to self-dealing transactions), was a breach of fiduciary duties Dick owed to Richard, and was done when Dick lacked the capacity to issue and purchase shares. Richard also asserted that Sergent, Bock, and Castro violated their fiduciary duties to PMI and conspired with Dick to breach the duties he owed to Richard.

The trial was done in two phases. The first phase was about the validity of the share issuance. The trial court granted a directed verdict against Richard on the capacity issue. The jury found that Dick violated fiduciary duties to Richard and § 21.418(b) of the Texas Business Organizations Code and, based on the verdict, the trial court entered a declaratory judgment that the share issuance was invalid and unenforceable. Tex. Bus. Org. Code Ann. § 21.418(b).

The second phase of trial concerned Richard's claims against Sergent, Bock, and Castro in their individual capacities. The trial court granted a directed verdict on those claims and discharged the jury. Both sides appealed.

## C. Prior appeal

The prior appeal mainly centered on § 21.418 of the Texas Business and Organizations Code and its restrictions on self-dealing. Although we held that some of the instructions regarding § 21.418 were superfluous, the error was harmless. *Matter of Estate of Poe*, 591 S.W.3d at 630.We upheld the finding that the share issuance was invalid based on the jury's answer that it violated self-dealing provisions of the Business Organizations Code and we therefore, did not reach the issue of whether Dick had breached an informal fiduciary duty to Richard. *Id.* at 635 The Texas Supreme Court, however held that the probate court erred in submitting a question about Dick's fiduciary duty to Richard because "as a matter of law, a corporation's director cannot owe an informal duty to operate or manage the corporation in the best interest of or for the benefit of an individual shareholder." *Matter of Estate of Poe*, 648 S.W.3d at 289. The Court reasoned that the erroneous submission of the informal fiduciary theory to the jury allowed for Richard to introduce evidence about the fairness to *him* of the transaction, possibly misleading and confusing the jury in answering the question about violations of § 21.418, which only pertained to fairness to *PMI*. *Id*. at 292–93. We also reversed the directed verdicts in favor of Sergent on the conspiracy claim and in favor of Bock and Sergent on the self-dealing claims but otherwise affirmed the directed verdicts. *Matter of Estate of Poe*, 591 S.W.3d at 643, 648. The Texas Supreme Court affirmed those holdings. *Matter of Estate of Poe*, 648 S.W.3d at 293. The case was remanded for trial on the surviving claims and "for further proceedings." *Id.*

## D. Article XIII claims on remand

Following remand, Richard amended his petition to assert new grounds for finding the share issuance and ownership invalid: violations of Article XIII of PMI's bylaws.

Article XIII, titled "Stock Restrictions," states, "None of the shares of the stock of the corporation, regardless, shall pass or be disposed of in any manner whatsoever to any person, partnership, corporation or estate without being offered in the manner hereinafter provided." What follows are three situations that trigger the duty to make an offer to sell shares. Richard labels these the first, second, and third sentence options.

> [First Sentence option] An offer shall be made not less than sixty (60) days prior to any proposed passage or disposition of stock whatsoever, including but not by way of limitation, to the passage or disposition by sale, delivery, assignment, gift, exchange, transfer, distribution by an executor or administrator, distribution by a trustee, or transfer by other legal process, including but not limited to divorce and guardianship proceedings.

Richard argues that the first sentence option required that PMI offer newly issued shares to him before selling them to any other person.

> [Second sentence option]: In the case of death or disability of any person owning stock in the company, such person or his or her executor, administrator or other personal representative, shall make an offer not less than sixty (60) days subsequent to the event of death or disability, but in any event within two (2) years after such event.

Richard contends that the second sentence option required Castro and Bock, as executors of Dick's estate, to offer to sell Dick's shares to him after Dick's death.

> [Third sentence option]: In case of the passage or disposition of stock in any voluntary or involuntary manner, whatsoever, including but not limited to passage or disposition in any manner mentioned above, as well as under judicial order, legal trust or encumbrance, or sale under any of them, the purchaser or one to whom the stock passes or to whom it is disposed of shall make an offer within thirty (30) days after the passage or disposition, if an offer has not been previously made in connection with the passage or disposition.

Richard argues that this third sentence option required the purchaser (Dick, or after his death, his Estate) to offer to sell the shares to him since no prior offers had been made.

Finally, Article XIII explains that the terms of the offer are to be included in a separate document:

> The terms and conditions of any such offer, purchase [*sic*] including the purchase price of the shares offered thereunder, and all of the terms and conditions reasonable to the giving and exercise of these options, shall be those set forth in the stock purchase agreement to be executed and dated as of even date herewith, such agreement being incorporated herein by reference as a part of the by-laws, and an executed copy of which shall be attached hereto.

No offer was made to sell the shares to Richard under any of these options. In his post-remand amended petition, Richard, individually and on behalf of PMI, claimed that the Appellees breached Article XIII by failing to offer to sell the shares to him. He sought damages, specific performance, and a declaratory judgment that the share issuance was an ultra vires act and void. Richard also asserted claims on behalf of PMI that Article XIII created fiduciary duties that Sergent, Dick, and the Estate conspired to and did breach.

### E. Summary judgment

Both sides filed for partial summary judgment. The trial court concluded the following:

- Article XIII did not give Richard a preemptive right to purchase newly issued shares;

- Article XIII was not enforceable because it was lacking essential terms and, further, that Appellees preserved this argument;

- Article XIII did not provide for a right of first refusal;

- Claims based on Article XIII are barred by the statute of limitations;

- Appellees are not individually liable;

- The Business Organizations Code does not provide the relief Richard sought with his ultra vires claim.

6

The trial court denied Richard's motion and granted Appellees' motion in part, dismissing six of Richard's causes of action to the extent that they are based on the alleged breaches of Article XIII of PMI's bylaws.

### F. Permission to file interlocutory appeal

Under § 51.014(d) of the Texas Civil Practices and Remedies Code, a trial court may, on a party's motion or its own motion, permit an interlocutory appeal of an otherwise unappealable order if (1) the order involves "a controlling question of law as to which there is a substantial ground for difference of opinion"; and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d); *see also* Tex. R. Civ. P. 168 (same). While both § 51.014(d) and Rule 168 refer to "controlling question of law" in the singular, multiple controlling questions may be certified. *See Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 147–52 (Tex. 2022) (addressing multiple controlling questions). Further, the controlling question or questions certified may implicate either the entire interlocutory order at issue or only a portion thereof. *See id*. at 142 (noting that the trial court granted permission to appeal only "[a] portion of [its] order") *id*. at 147 (noting that a permissive appeal may involve an order, "or, as the case may be, the relevant portion of [an] order").

In its order granting partial summary judgment, the trial court also granted permission to file a permissive appeal and identified the following controlling questions of law:

> Whether Article XIII of PMI's Bylaws obligated PMI, Dick Poe, and/or the Executors to make an offer to Plaintiff Richard C. Poe II for his purchase of the 1,100 shares of PMI stock purchased by Dick Poe in the May 2015 transaction including whether Article XIII applied to PMI's issuance of new shares.

> This issue includes the following subsidiary and ancillary issues: whether Article XIII is unenforceable because it does not include all material terms of the offer required to be made; whether Article XIII is unenforceable because it does not provide for a right of first refusal; whether the Article XIII claims are barred by

7

limitations; whether the Defendants are individually liable for breaching Article XIII; and whether Plaintiff's ultra vires claim based on Article XIII fails.

## G. This appeal

After controlling questions have been certified by the trial court, the appealing party must file a petition for permissive appeal with the appellate court, and the non-appealing party must be given an opportunity to respond or file a cross-petition. Tex. R. App. P. 28.3(a), (f). The appellate court must then decide whether to grant or deny the petition. Tex. R. App. P. 28.3(j). In exercising its discretion in this regard, the appellate court is guided by the legislative intent behind § 51.014(d): to favor "early, efficient resolution of determinative legal issues[.]" *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 732 (Tex. 2019). If the appeal is denied, the appeals court must state a finding that the appeal would not materially advance the ultimate termination of the litigation or does not involve a controlling question of law as to which there is a substantial difference of opinion. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(g). But the trial court's determination of these requirements does not "constrain[] the court of appeals' discretion" and "has no bearing on the court of appeals' subsequent evaluation of the requirements." *Indus. Specialists, LLC v. Blanchard Ref. Co.*, 652 S.W.3d 11, 16 (Tex. 2022). If the appeal is granted, the appellate court proceeds to "address the merits of the legal issues certified," including "all fairly included subsidiary issues and ancillary issues pertinent to resolving the controlling legal issue." *Elephant Ins.*, 644 S.W.3d at 147 (citing Texas Rules of Appellate Procedure 38.1(f) and 53.2(f)).

We granted Richard's petition for permissive appeal, noting that the trial court and the parties had all agreed that the two statutory requirements were met. Richard raises five issues on

appeal, roughly corresponding to the legal conclusions of the trial court. He argues that the trial court committed errors in the following ways:

(1) Refusing to enforce any of the three options in Article XIII of PMI's bylaws;

(2) Concluding that Article XIII was not a binding contract because it did not contain all material terms;

(3) Concluding that the Article XIII claims are barred by the statute of limitations;

(4) Concluding that the individual Appellees cannot be liable; and

(5) Concluding that Appellees could argue that the bylaws were missing essential terms when they did not plead a failure of a condition precedent.

To succeed on any of the issues, Article XIII must be an enforceable, binding contract. We begin there.

## II. ENFORCEABILITY OF THE BYLAWS

Article XIII describes the three situations that trigger the duty to make an offer to sell shares and states the time frame during which the offer must be made but does not contain any other specifics of the offer. Instead, it states that the terms of the offer were to be contained in a separate document:

> The terms and conditions of any such offer, [] including the purchase price of the shares offered thereunder, and all of the terms and conditions reasonable to the giving and exercise of these options, shall be set forth in *the stock purchase agreement* to be executed and dated as of even date herewith, such agreement being incorporated herein by reference as a part of the by-laws, and an executed copy of which shall be attached hereto.

It is undisputed that the stock purchase agreement was never executed.

Appellees argued and the trial court found that Article XIII is unenforceable because it does not contain material terms, especially the price at which the shares must be offered and to

9

whom they must be offered. Richard claims that those terms are implied or can be supplied by the court.

### A. Preservation of argument

Before discussing the enforceability of the bylaws, we must first consider Richard's fifth issue, in which he contends that Appellees did not preserve their argument that without the stock purchase agreement, the contract lacks essential terms. Richard says that Appellees' argument is essentially that the execution of a stock purchase agreement was a condition precedent to their compliance with the bylaws and to raise that defense, they were required to specifically deny the occurrence of the condition precedent. Tex. R. Civ. P. 54 (requiring a specific denial of the performance of conditions precedent).

A condition precedent is an *event* that must occur before one is obligated to perform under the contract. *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010). The contemplated stock purchase agreement was not an event that triggered rights under a contract; as it was to contain the terms of the offer, it was part of the contract itself. The existence of a contract is an element of a breach of contract cause of action that a plaintiff has the burden to prove, not a condition precedent that a defendant must specifically deny. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n. 21 (Tex. 2018) (listing existence of a contract as an element).

Because Appellees did not have to specifically deny the existence of the contract, they did not fail to preserve their argument that failure to execute a stock purchase agreement renders the options in the bylaws unenforceable. We overrule Richard's fifth issue.

**B. Standard of review**

A party is entitled to summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). The questions raised in the parties' motions for summary judgment and this appeal–specifically, whether PMI's bylaws are enforceable and their interpretation–are questions of law and therefore appropriate for determination on summary judgment. *Vermont Info. Processing, Inc. v. Montana Beverage Corp.*, 227 S.W.3d 846, 852 (Tex. App.—El Paso 2007, no pet.) ("Whether a particular agreement is an enforceable contract is generally a question of law."); *MCI Telecommunications Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999) ("When a contract is not ambiguous, the construction of the written instrument is a question of law for the court."). We review a trial court's summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When both parties file competing motions for summary judgment, we review the rulings on both motions and render the judgment the trial court should have rendered. *Id.*

**C. Contract construction**

We interpret a corporation's bylaws according to the rules of contract construction. *In re Aguilar*, 344 S.W.3d 41, 49 (Tex. App.—El Paso 2011, orig. proceeding). Like other contracts, bylaws cannot be enforced unless its material terms are definite and certain. "[A] contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound" and "to enable a court to understand the parties' obligations . . . and to give an appropriate remedy if they are breached." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (cleaned up).

11

**(1) Stock purchase agreement**

The parties disagree about the purpose of the stock purchase agreement and when it was supposed to be executed. Richard says that the stock purchase agreement is the *form* or *method* to be used for making the offer and therefore would not be prepared and executed until the obligation to make an offer is triggered. Appellees argue that the stock purchase agreement was supposed to be drafted at the same time as the bylaws. Without the stock purchase agreement, Appellees say, essential terms such as price and the identity of the offeree are missing and the contract is not enforceable. We agree with Appellees.

When construing contracts, "we assign terms their ordinary and generally accepted meaning unless the contract directs otherwise." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). The bylaws state that the stock purchase agreement was to be "executed and dated as of *even date herewith*" (emphasis added). The phrase "even date" means "same date" and "is sometimes used in one instrument to refer to another instrument with the same date[.]" *Even date*, BLACK'S LAW DICTIONARY (12th ed. 2024). "Herewith" means "with or in this letter or document." *Herewith*, BLACK's LAW DICTIONARY (12th ed. 2024). Therefore, according to the plain language of the bylaws, the stock purchase agreement was not only to contain the terms of any offer, but it was also supposed to be executed at the same time as the bylaws. Without the stock purchase agreement, the specific terms of the required offers are missing.

Appellees' position finds further support in the use of the definite article "the." Under Richard's interpretation, there would be a new stock purchase agreement executed any time one of the triggering events occurred. But the bylaws reference "*the* stock purchase agreement," not "*a* stock purchase agreement." The use of the definite article indicates that there is only one single

12

stock purchase agreement. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 709–10 (Tex. 2023), *reh'g denied* (June 9, 2023).

However, even if Richard were correct and the bylaws do not require the execution of a stock purchase agreement until the duty to make an offer arises, then the bylaws are unenforceable because they are only an agreement to agree sometime in the future. "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). Agreements to agree are only enforceable if they contain all material terms such that a court could determine what agreement the parties would have reached in the future. *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013). For example, in *Fischer*, the contract by which Fischer was selling his business provided that part of the price would depend on the percentage of completion for projects pending at the end of 2010 and that the parties would have to mutually agree to the percentage of completion. *Fischer*, 479 S.W.3d at 235. The Texas Supreme Court held that the contract was not an unenforceable agreement to agree because the "parties' prior dealings . . . indicates that the completion percentages represent simple calculations of the work performed[.]" *Id.* at 242. In this case, the terms of the contract are not determinable by simple calculations. Neither the contract itself nor the prior dealings of the parties supply a method for a court to determine the terms of the offer. If, as Richard contends, the terms of the offer are to be determined at some future time, the bylaws constitute nothing more than an unenforceable agreement to agree. *See, e.g. Pomilla v. Bumgardner*, 326 S.W.2d 917, 920–21 (Tex. App.—Houston 1959, no writ) (holding that a promise to sell shares at "such price as we may agree upon, keeping in mind the fair market value at such time" was an unenforceable agreement to agree); *Martin v. Martin*, 326

S.W.3d 741, 754 (Tex. App.—Texarkana 2010, pet. denied) (holding that an agreement that the parties would negotiate a shareholder agreement was "not binding and merely constitutes an agreement to agree in the future").

### (2) Implied terms

#### (a) Right of first refusal

Richard maintains that the bylaws could not establish the terms of the offer at the time they were executed because the options were rights of first refusal for which "there are no terms unless and until an offer is made." The terms of the offer, he insists, are the same as those offered to a third party.[1] This is *generally* the rule in rights of first refusals. *Archer v. Tregellas*, 566 S.W.3d 281, 286–87 (Tex. 2018); *Mr. W Fireworks, Inc. v. NRZ Inv. Group, LLC*, 677 S.W.3d 11, 22–23 (Tex. App.—El Paso 2023, pet. denied). However, we have also recognized that "[t]he details of a particular [preferential purchase] right depend upon the contract between the parties." *Mr. W.*, 677 S.W.3d at 24 (quoting *McMillan v. Dooley*, 144 S.W.3d 159, 175 (Tex. App.—Eastland 2004, pet. denied). And those terms "vary widely." *Id.*

In the context of stock restrictions, it cannot be assumed that the price of shares in a right of first refusal will always be the same as the price offered to a third party. Even in cases cited by Richard, the provisions giving a shareholder preemptive rights to purchase shares set a price that is not based on the third-party offer. *Johnsen v. ACP Distribution, Inc.*, 31 A.D.3d 172, 174 (Sup. Ct. NY. April 27, 2006) (price set at "book value . . . less a thirty (30%) percent discount from book value per share."); *Data Consultants, Inc. v. Traywick*, 593 F. Supp. 447, 450 (D. Md.

---

[1] Richard does not explain how this provides the price term under the second sentence option, which requires an offer to be made upon the death or disability of any shareholder. Under that option, unlike the first and third sentence options, there is no sale to a third party which could supply the terms of the offer.

14

1983), *aff'd*, 742 F.2d 1448 (D. Md. 1984) (option contract set price to "be computed as a function of the book value of each share shown on the balance of the company, as at the end of its last preceding tax year, prepared in accordance with normal accounting principles for this type of business by the firm of accountants then servicing the company"). As Appellees point out, legal forms used to draft transfer restrictions corroborate that price may be different than the price offered to a third-party. *See, e.g.*, 8 Texas Forms Legal & Bus. § 20:582 (book value determined by certified independent accountants); *Id.*, § 20:594 (appraised value); 8 West's Tex. Forms, Business Entities § 9.10.50 (3d ed.) (fair value determined by an appraiser); *id.* §15.8 (net book value).

Nor can we assume that Richard was the intended offeree under the bylaws. Share sale restrictions often require that an offer be made to the corporation. Tex. Bus. Orgs. Code Ann. § 21.211(a)(1) (allowing for a restriction on the transfers of shares that requires offering the corporation the opportunity to purchase); *Dixie Pipe Sales, Inc. v. Perry*, 834 S.W.2d 491, 493 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (holding that a stock purchase agreement required stockholders to offer the shares to the corporation before transferring them to a third party); 8 Texas Forms Legal & Bus. § 20:582 (requiring shareholder to offer shares to corporation before selling). Richard cites to *Katy Int'l, Inc. v. Jinchun Jiang* for the proposition that the only logical offeree was himself because he was the sole shareholder. 451 S.W.3d 74, 85 (Tex. App.— Houston [14th Dist.] 2014, pet. denied). That case, however, is factually distinguishable. The agreement there was that "[a]fter the company goes public, the shares will be cashed-out and each party will receive one third of the total[.]" *Id.* at 84. First, *Katy Int'l* did not involve share sale restrictions, but rather an agreement between the shareholders to cash out their shares in a company. *Id.* at 80. Second, the agreement in that case *did* identify who was to receive

15

the payment from the sale of shares: the parties to the agreement. *Id.* at 84. In this case, the bylaws neither name the offeree or reference the offeree in a way in which he or it is identifiable.

### (b) Reasonable terms

Richard also contends that the bylaws are enforceable despite their indefiniteness because trial courts can supply missing terms. "The failure of the parties to reach some understanding as to price often indicates that there has been no meeting of the minds." *Bendalin v. Delgado*, 406 S.W.2d 897, 899–900 (Tex. 1966). Nonetheless, "[w]here the parties have done everything else necessary to make a binding agreement . . ., their failure to specify the price does not leave the contract so incomplete that it cannot be enforced. In such a case it will be presumed that a reasonable price was intended." *Id.* at 900.

"The law's presumption that the parties intended a reasonable price is particularly strong when the agreement specifies a formula or other basis on which a reasonable price may be determined." *Fischer*, 479 S.W.3d at 241. *See, e.g., David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (holding that contract was enforceable because, even though it did not state a total price, it stated the hourly rate and "was therefore sufficiently clear to demonstrate a meeting of the minds[.]"); *Penwell v. Barrett*, 724 S.W.2d 902, 905 (Tex. App.—San Antonio 1987, no writ) ("When an agreement provides a standard to be applied in determining price, the contract is sufficiently definite to be enforceable."); *Katy Int'l.*, 451 S.W.3d at 85 (agreement that referred to "applicable Securities Commission regulations" was sufficiently definite because the regulations were ascertainable information). The bylaws in this case do not provide a standard or formula or refer to ascertainable information for calculating the price that should be charged.

Moreover, here, the parties to the bylaws did *not* do everything else to make a binding agreement. Just the opposite. The bylaws were not merely silent as to terms such as price. Instead,

16

they affirmatively stated that the terms would be defined and included in another document.[2] That step was expressly contemplated and not taken. If a court were to supply those missing terms, it would not be effectuating the parties' intention, but rewriting and adding to the contract, which courts cannot do.[3] *Fischer*, 479 S.W.3d at 239.

Richard also argues that the bylaws must be construed to prevent forfeiture of "rights he has held since August 2007." Although he does not explicitly state what rights he claims are being forfeited, he is presumably referring to being the sole (and therefore, majority) shareholder since PMI's formation. But the bylaws neither grant that right nor guarantee that Richard would remain in that position. Furthermore, contracts are construed to avoid forfeitures "whenever the language is reasonable susceptible to that interpretation." *Fischer*, 479 S.W.3d at 239. As explained above, the bylaws are not reasonably susceptible to an interpretation that includes a price term because they specifically state that the terms and conditions of the offer would be part of another document which they failed to draft. And because bylaws are a contract between shareholders and a corporation, *S. Methodist Univ. v. S. Cent. Jurisdictional Conference of the United Methodist*

---

[2] Appellees state in their brief that "Article XIII *disclaims* any intent to set these essential terms" and instead provides that they will be stated in the stock purchase agreement. Richard seizes on the word "disclaims" in his reply brief to argue that disclaimer is an affirmative defense that cannot be raised for the first time on appeal. The case that he relies on pertains to disclaimers of implied warranties. *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 135 (Tex. 2014). The *only* similarity between this case and *MAN Engines* is the use of the word "disclaim." Although Appellees used the word "disclaimer," they were not referencing the same type of disclaimer that, like with disclaimers of implied warranties, operates as a defense. We take their use of the word to mean only that the expressed intent in the bylaws was that the essential terms of the contract would be found elsewhere.

[3] The Texas Supreme Court, in *Bendalin v. Delgado*, held that a reasonable price could be inferred when the defendant, the director and president of the company for which plaintiff worked, convinced plaintiff to purchase stock by promising to purchase it from him if his employment terminated. *Bendalin v. Delgado*, 406 S.W.2d 897, 899–900 (Tex. 1966). Noting that courts imply reasonable prices in suits involving contracts for sale of foods and services, the Court stated, "No sound reason has been suggested, however, for applying a different rule to an agreement for the sale of corporate stock[.]" *Id*. at 900. That holding does not require inferring terms in this case. The facts of *Bendalin* were distinguishable; in that case, the contract was not a stock transfer restriction in the bylaws of a closely held corporation. More importantly, the agreement in *Bendalin* did not mention price at all; it did not, like in this case, state that the terms would be written in a separate document. *Id*.

*Church*, 716 S.W.3d 475, 487 (Tex. 2025), Richard as the sole shareholder could have, but did not, ensure that the bylaws contained all of the terms necessary for the options to be enforceable, making it possible for him to remain the sole shareholder.

### D. Judicial Admission

Finally, Richard argues that the Appellees judicially admitted that the second sentence option of Article XIII obligated Castro and Bock, as the executors of Dick's estate, to offer the shares to Richard after Dick's death. Bock, in his deposition, answered that he did not dispute that he and Castro, "as executors had an obligation to make an offer to Richard Poe under [the] second sentence [option] of Article XIII of PMI's bylaws[.]" Castro answered similarly.

Only facts, not questions of law, can be judicially admitted. *Rayner v. Claxton*, 659 S.W.3d 223, 245 (Tex. App.—El Paso 2022, no pet.); *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). The existence of an enforceable contract and the interpretation of an unambiguous contract are questions of law. *Vt. Info. Processing*, 227 S.W.3d 846 ("Whether a particular agreement is an enforceable contract is generally a question of law."); *MCI*, 995 S.W.2d at 650 (construction of an unambiguous contract is a question of law). Because Appellees' statements about what was required under the bylaws were not statements of fact, they are not judicial admissions.

Because the bylaws do not include the material terms of any offer that PMI, Dick, or the executors of Dick's estate was required to make to Richard, it was unenforceable. We overrule Richard's second issue.

### III. CONCLUSION

Because we hold that the bylaws do not constitute an enforceable contract requiring PMI, Dick, or the executors of his estate to make an offer to Richard for the purchase of shares, the trial

court did not err in granting summary judgment for Appellees and dismissing all claims grounded in violations of Article XIII. We therefore do not reach Richard's other issues. Tex. R. App. P. 47.1 (court of appeals opinion need address only issues "necessary to final disposition of the appeal"). The judgment of the trial court is affirmed, and all pending motions are denied as moot.

MARIA SALAS MENDOZA, Chief Justice

September 18, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.